UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL GEORGE ELIAS,                    Case No. 17-14033

             Plaintiff,           Linda V. Parker
v.                                        United States District Judge

COMMISSIONER OF SOCIAL                    Stephanie Dawkins Davis
SECURITY,                                 United States Magistrate Judge

             Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 13, 14)**

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On December 14, 2017, plaintiff Michael George Elias filed the instant suit. (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Linda V. Parker referred this matter to the undersigned for the purpose of reviewing the Commissioner's unfavorable decision denying plaintiff's claim for a period of disability and disability insurance benefits.  (Dkt. 3).  This matter is before the Court on cross-motions for summary judgment.  (Dkt. 13, 14).

### B.    Administrative Proceedings

Elias filed an application for a period of disability and disability insurance benefits on February 20, 2015, alleging disability beginning on September 18,

2014.  (Tr. 18).[1]  The claims were initially disapproved by the Commissioner on

April 15, 2015.  (*Id.*).  Elias requested a hearing and on August 30, 2016, he

appeared with counsel, before Administrative Law Judge ("ALJ") Beth J.

Contorer, who considered the case *de novo*.  (Tr. 18-25).  In a decision dated

September 15, 2016, the ALJ found that plaintiff was not disabled.  (Tr. 25).  The

ALJ's decision became the final decision of the Commissioner when the Appeals

Council, on October 11, 2017, denied plaintiff's request for review.  (Tr. 1-5);

*Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion

for summary judgment be **DENIED**, and that the case be **REMANDED** to the

Commissioner for further proceedings.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Elias, born November 14, 1962, was 51 years old on the alleged disability

onset date, placing him in the closely approaching advanced age category.  (Tr.

23).  He has past relevant work as a roofer.  (*Id.*).  He has a ninth-grade education

---

[1] The Administrative Record appears on the docket at entry number 7.  All references to the same are identified as "Tr."

and is able to read and write.  (Tr. 33-34).  He sustained a work injury to his left

knee on the alleged onset date when he fell off of a ladder at work.  (Tr. 226).

The ALJ applied the five-step disability analysis and found at step one that

plaintiff had not engaged in substantial gainful activity since September 18, 2014,

the alleged onset date.  (Tr. 20).  At step two, the ALJ found that Elias' history of

left lateral tibial plateau fracture status post ORIF with post-traumatic arthritis was

"severe" within the meaning of the second sequential step.  (*Id.*).  However, at step

three, the ALJ found no evidence that plaintiff's impairments singly or in

combination met or medically equaled one of the listings in the regulations.  (*Id.*).

Thereafter, the ALJ assessed plaintiff's residual functional capacity ("RFC")

as follows:

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform light work as defined in 20
> CFR 404.1567(h) with the following additional
> limitations: no climbing of ropes, ladders, or
> scaffolds; no climbing of more than three stairs at one
> time and never repetitively; no kneeling, crouching, or
> crawling; occasional stooping and balancing; and no
> standing/walking more than thirty minutes at one time,
> and no more than two hours total in an eight hour
> workday.

(Tr. 21).  At step four, the ALJ found that plaintiff was unable to perform any past

relevant work.  (Tr. 23).  At step five, the ALJ denied plaintiff benefits because she

found that there were jobs that exist in significant numbers in the national economy that plaintiff can perform.  (Tr. 24).

 B. <u>Plaintiff's Claim of Error</u>

 Elias contends that the ALJ erred in determining that he could perform light work with the additional limitation of standing and walking no more than 2 hours in a workday.  Elias also argues that the vocational expert's (VE) testimony does not support a finding that there are a significant number of jobs in the national economy that are light work jobs he could perform.  (Dkt. 13, at p. 11).

 Elias first notes that, for an individual such as himself who is between the ages of 50 and 54 (closely approaching advanced age) with a limited education and no transferable work skills, entitlement to benefits is premised largely upon the exertional level of work he is found capable of performing.  (*Id.* at p. 10).  Pursuant to the Medical-Vocational rules, or "grids," a person in this age category capable of only sedentary work is to be found disabled.  Whereas, if that same individual is capable of light work, the grids require a finding of not disabled.  (*Id.* at p. 10-11).

 Elias contends that the VE's testimony does not support a finding that he can perform light work.  He points out that under the regulations, light work is defined as lifting no more than 20 pounds at a time.  And even though the weight lifted may be very little, light work requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg

controls.  (*Id.* at p. 11) (citing 20 C.F.R. § 404.1567(b)).  According to SSR 83-10, the difference between light and sedentary work is that light work, if the weight lifted is light, involves a good deal of walking or standing—"the primary difference between sedentary and most light jobs."  According to Elias, during the administrative hearing, it appeared that the VE did not understand that the ALJ was looking for jobs that would require lifting up to 20 pounds because plaintiff was limited to standing or walking less than two hours a day.  (*Id.* at p. 12).

Ultimately, the VE listed three jobs she thought Elias could perform: inspector, general office clerk, and paper sorter.  The VE acknowledged that those jobs did not require lifting 20 pounds, but that they were light because they are traditionally performed while the individual was on his feet, even though Elias could do the job while seated.  The VE explained that some jobs that do not require much carrying or lifting are listed as light because the individual is on his feet.  (*Id.* at p. 13).  Elias contends that he cannot perform the jobs identified because he is limited to no more than two hours of walking or standing.

Although the VE addressed the lifting requirements of the three jobs, Elias asserts that the testimony still does not establish that the jobs as he can perform them are light work.  The VE stated that the jobs listed could involve carrying up to 20 pounds, but that they do not necessarily require carrying up to 20 pounds. (*Id.* at p. 15-16).  However, given his inability to walk or stand more than two

5

hours in a day, Elias argues that the VE should have testified to how many

positions would be available as plaintiff could perform them, not how many jobs

were available because they were typically done while standing.  (*Id.* at p. 16).

Therefore, Elias contends that there is no basis for the finding that appropriately

light jobs exist in substantial numbers in the national economy that he could

actually perform.

     C.    <u>Commissioner's Motion for Summary Judgment</u>

The Commissioner agrees that if Elias were limited to sedentary work the

grids would direct a finding that he was disabled.  (Dkt. 14, at p. 6).  However, the

Commissioner argues that the ALJ did not err in determining that Elias could

perform light work, or in finding that he could perform the listed jobs at the light

work exertional level.

The Commissioner argues that just because Elias was limited to two hours of

standing or walking per day does not mean that his RFC should have been

characterized as sedentary.  (*Id.* at p. 7).  The regulations specifically provide that a

job is also considered light if it involves lifting up to twenty pounds at a time

and/or involves pushing or pulling with arm or leg controls.  (*Id.*) (citing 20 C.F.R.

§ 404.1567(b)).  Similarly, the Commissioner asserts that a job is not sedentary

simply because it involves sitting most of the time; rather, a job is sedentary if

"walking and standing are required occasionally *and other sedentary criteria are*

6

*met*," i.e. if the job involves lifting no more than 10 pounds at a time.  (*Id.*) (citing 20 C.F.R. § 404.1567(a) (emphasis added)).

The Commissioner defends the light work RFC noting that the Sixth Circuit has rejected the argument that, "because [a claimant] could not perform a full range of light work, []he must necessarily have only been able to do sedentary work."  (*Id.* at p. 8) (quoting *Blankenship v. Comm'r of Soc. Sec.*, 624 Fed. Appx. 419, 429 (6th Cir. 2015)).  Other courts have similarly concluded that an RFC limiting the claimant to two hours of standing or walking is not inconsistent with SSR 83-10.  *Stamps v. Comm'r of Soc. Sec.*, No. 15-0557, 2016 WL 4500793, at *4 (W.D. Mich. Aug. 29, 2016) (citing *Freeman v. Colvin*, No. 15-216, 2016 WL 697140, at *5 (E.D. Tenn. Feb. 19, 2016) (considering a claimant limited to standing or walking for only two hours in an eight-hour workday), and *Wierenga v. Comm'r of Soc. Sec.*, No. 12-0022, 2015 WL 5608222, at *7 (W.D. Mich. Sept. 23, 2015) (same)).  The Commissioner distinguishes this case from *Wilkerson v. Comm'r of Soc. Sec.*, 278 F. Supp. 3d 956 (E.D. Mich. 2017).  (*Id.* at p. 9).  While in *Wilkerson* the ALJ did not explain the basis for finding that the plaintiff could do light work despite his limitation to two hours of standing or walking, here the ALJ was clear that Elias could do the lifting, carrying, pushing, and pulling requirements of light work despite his standing and walking limitations.

Next, the Commissioner argues that the VE's testimony supports the finding that Elias could do light work existing in significant numbers in the national economy.  (Dkt. 14, at p. 9).  The ALJ properly called on a VE to testify in this matter because Elias's RFC fell between the light and sedentary levels.  The VE stated that the jobs listed could be done with a two-hour limitation on standing and walking.  (*Id.* at p. 10).  The VE further stated that the jobs could involve carrying up to 20 pounds and could also involve pushing and pulling up to 20 pounds on a cart or wheeled bin, although they might not necessarily require carrying or pushing/pulling 20 pounds.  Carrying, pushing, or pulling 20 pounds fits squarely within the requirements of light work, not sedentary work.

Regarding Elias's claim that the VE should have testified to how many jobs exist in the national economy that involve lifting, carrying, pushing, or pulling up to 20 pounds, the Commissioner contends that the VE's testimony on the number of available jobs is sufficient.  The VE testified that there were a total of 645,000 jobs available.  The Sixth Circuit has stated that just 6,000 available jobs constitutes a significant number in the national economy.  (*Id.* at p. 11) (citing *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016)).  Thus, less than one percent of the jobs the VE referred to would need to involve lifting, carrying, pushing, or pulling up to twenty pounds to constitute a significant number. Therefore, according to the Commissioner, even if the numbers the VE cited were

significantly over-inclusive, substantial evidence still supports the ALJ's step five finding.

      D.    <u>Plaintiff's Reply</u>

In reply, Elias stresses that, because a finding of disabled would be directed if he were limited to sedentary work, a determination of his actual ability to perform work is critical.  (Dkt. 15, at p. 2).  Although the ALJ limited Elias to walking or standing up to two hours a day, and the VE testified that an individual who could walk *less than* two hours a day would be limited to sedentary work, he argues that this case should not turn on a difference of one minute of standing or walking.  Elias notes that the regulation defines sedentary work as requiring walking or standing occasionally.  (*Id.*) (citing 20 C.F.R. § 404.1567(a)).  SSR 83-10 further provides that since sedentary work requires being on foot occasionally, periods of standing or walking should total no more than about two hours in a workday.  Thus, implies Elias, a limitation to standing and walking no more than two hours in a work day calls for work that is sedentary.  (*Id.* at p. 2-3).

Attacking the RFC determination, Elias addresses this Court's ruling in *Wilkerson v. Comm'r of Soc. Sec.*, 278 F. Supp. 956, 969-970 (E.D. Mich. 2017).  (*Id.* at p. 3).  Elias contends that, like in *Wilkerson*, because he is unable to perform both the minimum lifting and standing/walking requirements of light work, he should not have been found capable of performing light work "in the first place."

## III. DISCUSSION

### A. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record

only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001).  When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole,

including evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health*

*& Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals

and the district court may look to any evidence in the record, regardless of whether

it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245

F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the

ALJ or the reviewing court discuss every piece of evidence in the administrative

record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006)

("[a]n ALJ can consider all the evidence without directly addressing in his written

decision every piece of evidence submitted by a party.") (internal citation marks

omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526

(6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq.*) and the

Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq.*).

Title II benefits are available to qualifying wage earners who become disabled

prior to the expiration of their insured status; Title XVI benefits are available to

poverty stricken adults and children who become disabled.  F. Bloch, Federal

Disability Law and Practice § 1.1 (1984).  While the two programs have different

eligibility requirements, "DIB and SSI are available only for those who have a

'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability"

means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

13

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis set forth at 20 C.F.R. §§ 404.1520, 416.920.  Essentially, the ALJ must determine whether: (1) the plaintiff is engaged in significant gainful activity; (2) the plaintiff has any severe impairment(s); (3) plaintiff's impairments alone or in combination meet or equal a Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to perform past relevant work, whether there is work in the national economy that the plaintiff can perform.  (*Id*.).  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding rejecting the existence of disability, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

14

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

    C.    <u>Analysis and Conclusions</u>

Because the Commissioner raised the issue of whether the light work RFC in this case limiting Elias to standing or walking no more than two hours is consistent with the definition of light work, and Elias took up the issue in the reply, the undersigned will address the RFC.

As set forth above, the ALJ determined that Elias has the ability to perform light work with the following additional limitations: no climbing of ropes, ladders, or scaffolds; no climbing of more than three stairs at one time and never repetitively; no kneeling, crouching, or crawling; occasional stooping and balancing; and no standing/walking more than thirty minutes at one time, and no more than two hours total in an eight-hour workday.  (Tr. 21).

We turn first to the regulations to determine whether this RFC more closely represents light work or sedentary work.  As the parties note, if this is a sedentary RFC then Elias is disabled under the Medical-Vocational Guidelines, or Grids. The regulations define light work and sedentary work as follows:

15

> Sedentary work involves lifting no more than 10 pounds
> at a time and occasionally lifting or carrying articles like
> docket files, ledgers, and small tools.  Although a
> sedentary job is defined as one which involves sitting, a
> certain amount of walking and standing is often
> necessary in carrying out job duties.  Jobs are sedentary if
> walking and standing are required occasionally and other
> sedentary criteria are met.
>
> Light work involves lifting no more than 20 pounds at a
> time with frequent lifting or carrying of objects weighing
> up to 10 pounds.  Even though the weight lifted may be
> very little, a job is in this category when it requires a
> good deal of walking or standing, or when it involves
> sitting most of the time with some pushing and pulling of
> arm or leg controls.  To be considered capable of
> performing a full or wide range of light work, you must
> have the ability to do substantially all of these activities.
> If someone can do light work, we determine that he or
> she can also do sedentary work, unless there are
> additional limiting factors such as loss of fine dexterity or
> inability to sit for long periods of time.

20 C.F.R. 404.1567(a) and (b).  Social Security Ruling (SSR) 83-10 defines

"occasionally" and "frequently" as follows:

> "Occasionally" means occurring from very little up to
> one-third of the time.  Since being on one's feet is
> required "occasionally" at the sedentary level of exertion,
> periods of standing or walking should generally total no
> more than about 2 hours of an 8-hour workday, and
> sitting should generally total approximately 6 hours of an
> 8-hour workday.  Work processes in specific jobs will
> dictate how often and how long a person will need to be
> on his or her feet to obtain or return small articles.
>
> . . . .

"Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping. Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. They require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work.

SSR 83-10, 1983 WL 31251, at *5-6 (Jan. 1, 1983).

Here, the ALJ assessed a light work RFC, including the ability to lift no more than 20 pounds occasionally and lift or carry 10 pounds frequently, but with the inability to stand or walk more than two hours in an eight-hour day. This RFC, on its face, meets the weight lifting requirements of light work but the sedentary requirements for standing and walking. Agency policy provides guidance for applying the Grids when a claimant's RFC falls somewhere between two exertional levels. *Ford v. Colvin*, 2015 WL 4608136, at *7 (D. Del. July 31, 2015) (citing SSR 83-12, 1983 WL 31253, at *1 (Jan. 1, 1983)). If a claimant's RFC falls between two levels for which the Grids direct the same finding, the ALJ should apply the finding as directed. *Id.* (citing SSR 83-12, 1983 WL 31253, at *2). If a claimant's RFC falls between two levels for which the Grids direct

17

opposite findings, the ALJ must consider whether the claimant is *slightly* or

*significantly* reduced in his or her ability to perform at the higher exertional

level. *Id.; see also* Program Operations Manual System ("POMS") DI 25025.015.

If the claimant's ability is slightly reduced, the ALJ should apply the higher

exertional level and find the claimant not disabled. *Id.* (citing POMS DI

25025.015). If the claimant's ability is significantly reduced, the ALJ should apply

the lower exertional level and find the claimant disabled. *Id.* In situations where

the claimant's ability is somewhere "in the middle," agency policy advises using a

vocational expert. *Id.* (citing SSR 83-12, 1983 WL 31253, at *3).

      The Commissioner argues that, because the RFC falls between the light and

sedentary exertional levels, the ALJ properly called a VE to determine whether

there were jobs existing in significant numbers in the national economy that Elias

could perform. (Dkt. 14, at p. 9). However, the ALJ did not expressly determine

that the RFC fell between the two exertional levels, and calling on a VE did not

remedy the inconsistency in the RFC.

      This Court's decision in *Wilkerson v. Comm'r of Soc. Sec.*, 278 F. Supp. 3d

956 (E.D. Mich. 2017), is instructive. In *Wilkerson*, the ALJ assessed an RFC

limiting the claimant to two hours of standing or walking in a workday and sitting

for six hours, but characterized the work as "light work." *Id.* at 959. The plaintiff

argued that a limitation to standing/walking only two hours in a day was

inconsistent with a light work RFC.  The Court found two problems with the ALJ's

analysis regarding the RFC:

> First, the ALJ's analysis assumes that plaintiff's RFC
> falls somewhere "in the middle" of a sedentary RFC and
> a light RFC.  Yet, the two most significant defining
> characteristics of these two categories of work are (1) the
> amount and duration a claimant can lift/carry in an 8 hour
> work day; and (2) the amount of time in an 8 hour work
> day that a claimant can stand and walk. Sedentary work
> involves lifting/carrying no more than 10 pounds,
> occasionally, meaning up to 1/3 of the work day; in other
> words, someone with a sedentary classification may be
> on their feet up to 2.67 hours per day, and may not lift or
> carry more than 10 pounds in that time limit.  Light work
> involves lifting no more than 20 pounds at a time with
> frequent (1/3 to 2/3 of an 8 hour work day) lifting or
> carrying [ ] objects weighing up to 10 pounds. Thus,
> someone who can perform light work must be able to lift
> and carry 10 pounds for 2.67-5.33 hours per day.  By
> logical extension, light work requires a person to be on
> their feet for 2.67-5.33 hours in a day, while lifting and
> carrying up to 10 pounds in that time.  *See* SSR 83-10, *5
> ("lifting or carrying requires being on one's feet.").  Yet
> here, the ALJ found that plaintiff could only walk/stand
> for up to 2 hours per day.  Thus, not only is plaintiff
> unable to perform the minimum walking/standing
> requirement for light work, she also cannot meet the
> minimum lifting and carrying requirements for light
> work.  Secondly, in the view of the undersigned, it is not
> clear that the ALJ considered this limitation before
> apparently determining that plaintiff's RFC fell "in the
> middle" of sedentary and light.  *See e.g.*, *Ford v. Colvin*,
> 2015 WL 4608136, *8 (D. Del. 2015) (Remand required
> where ALJ offered no explanation as to why the
> "plaintiff cannot do either of the two things at the heart of
> light work [walking/standing and lifting/carrying] and
> still be classified as capable of performing it."); *McClure
> v. Comm'r of Soc. Sec.*, 2016 WL 4628049, *7 (S.D. Cal.

> 2016) (ALJ's conclusion that the plaintiff could only
> stand/walk two hours per day put her closer to sedentary
> work than light work and thus, her exertional limitations
> did not fall "somewhere in the middle.").

*Id.* at 970.

The Commissioner argues here, as the agency argued in *Wilkerson*, that the ALJ properly consulted a VE because Elias's limitations fell between light and sedentary work. (Dkt. 14, at p. 9). The Court agrees that consultation with a VE was appropriate under these circumstances. The ALJ discussed the medical evidence in the record, noting that Elias's orthopedic surgeon opined that Elias would have permanent limitations in standing, kneeling, squatting, and climbing ladders. (Tr. 22, 298, 312). It is unclear from the ALJ's discussion however, whether the standing/walking limitation would require a limitation in lifting and carrying required by light work. Thus, it is unclear whether the ALJ actually determined that Elias's RFC is in between sedentary and light work. While questioning the VE at the administrative hearing, the ALJ made clear that the jobs found by the VE should allow for standing/walking no more than two hours and require lifting 20 pounds. (Tr. 47-48). The ALJ did not, however, discuss with or indicate to the VE that the jobs should require lifting or carrying—either 10 pounds or 20 pounds—for only two hours in a workday. Without this explicit acknowledgment, it appears that the ALJ believes that Elias can lift or carry up to 10 pounds for 1/3 to 2/3 of a work day—an action necessarily requiring standing or

20

walking during those hours—while standing or walking for no more than two hours in a day, or less than 1/3 of a workday.  These weight lifting and standing/walking conclusions are inconsistent.  As a result of the ALJ's silence on the point, the ALJ's decision "fails to provide an accurate and logical bridge between the evidence and the result.'"  *Gross v. Comm'r of Soc. Sec.*, 247 F.Supp.3d 824, 829 (E.D. Mich. 2017) (Patti, M.J.) (citing *Pollaccia v. Comm'r of Soc. Sec.*, 2011 WL 281044, *6 (E.D. Mich. Jan. 6, 2011)).

Similar RFCs have been analyzed by a number of courts around the country and, most often, remand is required.  *See e.g.*, *Slade v. Comm'r of Soc. Sec.*, 2018 WL 3827396 (E.D. Mich. July 6, 2018), *report and recommendation adopted*, 2018 WL 3819091 (Remanding because the frequent lifting and carrying requirements of light work are inconsistent with an RFC limiting standing or walking to 2 hours in a day, and the ALJ did not consider how the standing/walking limitation necessarily mandated an accompanying limitation in lifting/carrying required by light work); *Saeed v. Berryhill*, 2018 WL 1243953, at *11 (D. Mass. Mar. 9, 2018) (recognizing the "potential inconsistency" between an RFC incorporating a two-hour standing/walking limitation but otherwise finding the capacity to perform light work and remanding where such a contradiction "may be outcome dispositive given [the claimant's] age"); *Bisceglia v. Colvin*, 2016 WL 1248860, at *7-8 (E.D.Va. Mar. 25, 2016) (remanding where ALJ assessed a light

work RFC but limited claimant to 2 hours of standing/walking);  *Ferdin v. Comm'r of Soc. Sec.*, 2015 WL 7767980, at *11 (W.D. Tex. July 30, 2015) (concluding that the ALJ's RFC assessment—which provided that the plaintiff could perform a range of light work, but was limited to 2 hours of standing or walking in an 8-hour workday—contained "inherent contradictions and incongruities," requiring remand);  *Campbell v. Astrue*, 2010 WL 4689521, at *5 (E.D. Pa. Nov. 2, 2010) (remanding due to an "inherent contradiction" between the ALJ's finding that the plaintiff could frequently lift or carry 10 pounds and his finding that the plaintiff was limited to 1-2 hours of standing/walking in an 8-hour day).

The Commissioner's citations to two unpublished opinions—*Blankenship v. Comm'r of Soc. Sec*., 624 Fed. Appx. 419, 429 (6th Cir. 2015) and *Stamps v. Comm'r of Soc. Sec*., 2016 WL 4500793, at *4 (W.D. Mich. Aug. 29, 2016)—are unavailing.  (Dkt. 14, at p. 8).  Both cases are distinguishable.  In *Stamps*, the ALJ assessed a light work RFC further limiting the plaintiff to standing/walking for only two hours in a day and no pushing or pulling with the right lower extremity. 2016 WL 4500793, at *2.  The plaintiff argued that this RFC was contrary to relevant SSRs.  The court disagreed because the RFC did not include any restrictions on pushing or pulling with the left lower extremity or upper extremities, thus the RFC determination reasonably included jobs that involve sitting most of the time with pushing/pulling controls.  This determination in

combination with the jobs cited by the VE led the Court to conclude that the ALJ's determination that the plaintiff could perform light work was supported by substantial evidence. *Id.* at \*4.

Here, unlike in *Stamps*, the ALJ did not discuss Elias's ability to push or pull, which is questionable as it relates to his left lower extremity given his knee issues. The ALJ noted that the jobs might require pushing or pulling a cart weighing 20 pounds, but this is different from *pushing or pulling arm or leg controls* as specified in the definition of light work. (Tr. 51). Again, the ALJ's failure to discuss how Elias is able to perform light work in line with the restrictions in the RFC clouds the RFC determination. Further, here, as in *Wilkerson*, the jobs identified by the VE do not appear to be those involving sitting most of the time while requiring pushing and pulling of arm or leg controls. *Wilkerson*, 278 F. Supp. 3d, 973 n. 2.

In *Blankenship*, the plaintiff argued that because she could not perform a full range of light work she must necessarily have only been able to do sedentary work; she did not provide any authority for this proposition, so the court rejected the argument. Here, neither the undersigned nor Elias is suggesting that the inability to perform a full range of light work means he must be found capable of only sedentary work. Rather, the issue is whether the RFC, which limits his standing and walking but not his lifting abilities, is internally inconsistent and requires

further explanation from the ALJ.  Again, the ALJ's lack of discussion on the distinction between standing/walking for only two hours on the one hand, while lifting or carrying 1/3 to 2/3 of the day on the other hand results in no logical bridge between the evidence and the decision.   The undersigned acknowledges that the regulations do not require that a claimant be able to perform the *full range* of light work.  SSR 83–10, on its face, describes a range of light work and a particular claimant may fall at various points within that range.  There could certainly be situations where a claimant's RFC could fall within that range and, depending on other exertional or nonexertional limitations, or other factors, the consultation of a vocational expert would still be required.  Where a claimant is found capable of less than a full range, it does not necessarily follow that that the exertional level should be assigned when the claimant does not have the capability of performing most of the defined activities.  Thus, the mere consultation of a VE in this case, does not cure the error as the Commissioner has posited.  *See Wilkerson*, 278 F. Supp. 3d at 973-74.

As explained above, the ALJ does not appear to have reconciled how the limitation of standing/walking two hours per day necessarily mandates an accompanying limitation in the lifting/carrying required of light work, and whether this means that plaintiff's RFC is not actually in the middle of sedentary and light work.  Equally important, the ALJ did not address the attendant limitation in

24

lifting/carrying in his hypothetical questions posed to the VE.[2]  (Tr. 47-53).   In the absence of such consideration, the undersigned concludes that the ALJ's decision "fails to provide an accurate and logical bridge between the evidence and the result,'" *Gross*, 247 F.Supp.3d at 829, and, because the issue is potentially outcome determinative, remand is appropriate so that the ALJ can properly explain the basis for his decision that Elias's RFC falls within the light work category.[3]

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that defendant's motion for summary judgment be **DENIED**, and that the case be **REMANDED** to the Commissioner for further proceedings.

---

[2] Rather, the ALJ asked the VE for a light work job performed with no more than two hours of standing/walking but involves occasionally lifting or carrying up to 20 pounds.  (Tr. 51). There are two issues with the hypothetical.  First, light work requires more than lifting 20 pounds occasionally; it also requires lifting or carrying up to 10 pounds frequently.  Second, two hours of standing/walking is less than occasionally, or 1/3 (2.67 hours) of the workday.  There is no lifting limitation in the RFC to accommodate lifting or carrying for only 1/3 of the workday. According to the RFC, Elias can lift or carry at up to 10 pounds frequently and lift 20 pounds occasionally.  As discussed, these lifting requirements and the standing/walking restriction are incompatible.

[3] As the *Slade* court noted, the undersigned is not suggesting that a 2-hour standing/walking limitation necessitates a sedentary RFC or that the mere inconsistency between such a standing/walking limitation and a lift/carry capacity requires remand.  Rather, for the reasons set forth above, the undersigned finds that under the facts of this case, the ALJ's decision fails to sufficiently address the inconsistency and that remand is the better course in this case because it is outcome determinative.  2018 WL 3827396, at *6 n. 6.

The parties to this action may object to and seek review of this Report and Recommendation but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: January 26, 2019                    s/Stephanie Dawkins Davis
                                          Stephanie Dawkins Davis
                                          United States Magistrate Judge